[No. 74986-8. En Banc.]
Argued November 10, 2004. Decided May 26, 2005.

REBECCA L. TROXELL, *Respondent*, v. RAINIER PUBLIC SCHOOL DISTRICT NO. 307, *Petitioner*.

346

*H. Andrew Saller, Jr.* (of *Vandeberg Johnson & Gandara*) and *Neli T. Espe*, for petitioner.

*Mary Elizabeth Van Gemert* (*Robert E. Sabido* and *Thomas M. Christ* of *Cosgrave Vergeer Kester, L.L.P.*, and *Michael L. Ritchey* of *Thompson & Ritchey, L.L.P.*, of counsel), for respondent.

¶1 OWENS, J. — RCW 4.96.020(4) forbids the commencement of a tort action against a local government defendant "until sixty days have elapsed after" the plaintiff files a claim notice with the local government entity. We must

determine whether a plaintiff strictly complies with the statutorily prescribed "sixty-day period" if only 59 full calendar days intervene between the day the notice is filed and the day the legal action is commenced. Consistent with the general rule applicable to the computation of waiting periods, we hold that, by its plain language, RCW 4.96.020(4) requires that 60 calendar days must intercede between the dates on which a plaintiff files a tort claim notice and commences a lawsuit. Because the Court of Appeals erred in concluding that a complaint could be filed on the 60th day after the filing of the notice of claim, we reverse the Court of Appeals and affirm the trial court's summary dismissal of plaintiff Rebecca Troxell's suit against the Rainier Public School District No. 307 (the District).

## FACTS

¶2 At 3:35 P.M. on Monday, December 10, 2001, Troxell served on the District a tort claim notice pursuant to RCW 4.96.020. Troxell alleged in the notice that, on December 17, 1998, she fell in the unlighted parking lot at Rainier High School, injuring her left leg. The statute prescribes a waiting period between the filing of a notice of claim and the commencement of a lawsuit: "No action shall be commenced against any local governmental entity for damages arising out of tortious conduct *until sixty days have elapsed after the claim has first been presented to and filed with the governing body* thereof. The applicable period of limitations within which an action must be commenced shall be tolled during *the sixty-day period*." RCW 4.96.020(4) (emphasis added). Troxell commenced her action against the District on Friday, February 8, 2002, by filing a complaint at 11:29 A.M. in Thurston County Superior Court.[1]

¶3 The District moved for summary judgment in April 2002, arguing that Troxell had commenced her action

---

[1] "[A] civil action is commenced by service of a copy of a summons together with a copy of a complaint . . . or by filing a complaint." CR 3(a).

against the District prior to the expiration of the statutorily imposed 60-day waiting period. The trial court granted the District's motion on June 6, 2002. The court determined that there was "no genuine issue as to the material fact that Plaintiff commenced this lawsuit on the 60th day after the filing of the Tort Claim Notice and . . . that because Plaintiff did not comply with RCW 4.96.020 the Defendant [was] entitled to judgment as a matter of law." Clerk's Papers at 68-69. Because the statute of limitations had run,[2] the trial court dismissed Troxell's complaint with prejudice.

¶4 Troxell appealed, but Court of Appeals Commissioner Eric B. Schmidt affirmed the trial court's summary dismissal of the suit, stating that "[t]he first day occurring after 60 days have elapsed is the sixty-first day, not the sixtieth day, following the filing of the tort claim notice." Ruling Affirming J. (Mar. 3, 2003) at 5. The Court of Appeals, however, granted Troxell's motion to modify Commissioner Schmidt's ruling and, in a published opinion, reversed the decisions of the trial court and Commissioner Schmidt. *Troxell v. Rainier Pub. Sch. Dist. No. 307*, 119 Wn. App. 361, 366, 80 P.3d 623 (2003). Although the Court of Appeals acknowledged that strict compliance with "the sixty-day period" of RCW 4.96.020(4) was required, the court concluded that the mandatory 60-day waiting period was satisfied by the passage of 59 calendar days between the filing dates of Troxell's claim notice and complaint. In holding that suit could be commenced at any time on the 60th calendar day after the filing date of the claim notice, the Court of Appeals necessarily determined that strict compliance required neither the passage of 60 calendar days nor the passage of 60 24-hour periods.

---

[2] The last day of the original three-year statute of limitations period applicable to Troxell's claim was Monday, December 17, 2001. As required under RCW 4.96.020(4), the limitations period was "tolled during the sixty-day period." We recently stated that the tolling provision of RCW 4.96.020(4) "adds 60 days to the end of the otherwise applicable statute of limitations." *Castro v. Stanwood Sch. Dist. No. 401*, 151 Wn.2d 221, 226, 86 P.3d 1166 (2004). Consequently, the last day of Troxell's extended statute of limitations period was Friday, February 15, 2002.

¶5 We granted the District's petition for review.

## ISSUE

¶6 Under RCW 4.96.020(4), which forbids the commencement of a tort action "until sixty days have elapsed after" the filing of the notice of claim with the "local governmental entity," does a plaintiff strictly comply with the required "sixty-day period," where only 59 full calendar days intervene between the day notice is filed and the day suit is commenced?

## ANALYSIS

¶7 *Standard of Review.* Appellate review of a trial court's decision on summary judgment is de novo. *Castro v. Stanwood Sch. Dist. No. 401*, 151 Wn.2d 221, 224, 86 P.3d 1166 (2004). A motion for summary judgment is properly granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c). Because the material facts in this case—the dates on which Troxell filed her notice and her complaint—have never been disputed, our review of the trial court's summary dismissal of Troxell's complaint turns solely on the proper interpretation of RCW 4.96.020(4). As with all questions of law, the interpretation of a statute is reviewed de novo. *Castro*, 151 Wn.2d at 224. When asked to resolve a question of statutory interpretation, this court's duty is "to discern and implement the intent of the legislature." *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003). The court must take as its "starting point . . . 'the statute's plain language and ordinary meaning.' " *Id.* (quoting *Nat'l Elec. Contractors Ass'n v. Riveland*, 138 Wn.2d 9, 19, 978 P.2d 481 (1999)). An interpretation that produces "absurd consequences" must be rejected, since such results would belie legislative intent. *State v. Vela*, 100 Wn.2d 636, 641, 673 P.2d 185 (1983).

¶8 *Computation of the Waiting Period Required under RCW 4.96.020(4).* RCW 4.96.020(4) forbids the commencement of a tort action "until sixty days have elapsed after" the filing of the notice of claim with the "local

governmental entity." As we observed in *Medina v. Public Utility District No. 1 of Benton County*, 147 Wn.2d 303, 53 P.3d 993 (2002), "[t]he purpose of RCW 4.96.020(4) is to establish a period of time for government defendants to investigate claims and settle those claims where possible." *Id*. at 317. In *Medina*, we held that, because "the legislature adopted a 60-day waiting period" to effect that purpose, plaintiffs must strictly comply with the statutory time requirement. *Id*. at 316-18.

¶9 Troxell contends that by filing her complaint on February 8, 2002, she strictly complied with the 60-day requirement. Troxell maintains that the "60-day clock" started ticking when she filed her tort claim notice (at 3:35 P.M. on December 10, 2001), that the first day of the waiting period was December 10 to 11, and that the 60th day was therefore February 7 to 8, 2002. Suppl. Br. of Resp't at 4. Troxell claims that, even though the clock started ticking when she served her notice at 3:35 P.M. on December 10, day 1 of the waiting period elapsed, not at 3:35 P.M., 24 hours later, but at 12:00 A.M. on December 12; in fact, by Troxell's reckoning, one day elapses in the period of time from 11:59:59 P.M. until 12:00:00 A.M. Asserting that day 60 elapses the moment day 60 arrives, Troxell essentially argues that strict compliance with the statutory 60-day waiting period requires the passage of 59 calendar days and any portion of day 60.

¶10 The Court of Appeals agreed with Troxell that "[s]ixty days elapsed on the 60th day, which [was] February 8, 2002," but the court and Troxell offered conflicting explanations of their counting methods. 119 Wn. App. at 366. Troxell stated "that 60 days . . . elapsed on the 60th day, *not counting the starting date*." Suppl. Br. of Resp't at 1 (emphasis added). While Troxell thus excluded the starting date and counted the date on which suit was commenced, the Court of Appeals purported to "calculate the time elapsed *to include the date of the filing of the notice and*

*exclude the last date.*"[3] Although Troxell and the Court of Appeals do not clearly agree on which filing date is to be included, they do have in common the need to count at least one of the two dates toward the 60-day waiting period, for if neither date were counted, they would be left with no more than the 59 intervening days.

¶11 In contrast, the District interprets the statute as mandating that a waiting period of 60 full calendar days must intervene between the filing of the tort claim notice and the commencement of suit; in other words, neither the filing date of the claim notice nor the date on which suit is commenced may be counted toward the 60-day period. Specifically, the District asserts that December 10, 2001, was excluded, contributing no time to the waiting period; that the 60 days in the waiting period included December 11, 2001, and ran through February 8, 2002; and that strict compliance with the statute thus precluded Troxell from filing suit prior to February 9, 2002.

■ ¶12 At issue, then, is whether the statute imposes a waiting period of 60 full days, as the District contends, or may be satisfied by 59 days and some fraction of a 60th day, as Troxell maintains. We hold that the plain language of RCW 4.96.020(4) requires a waiting period of 60 full calendar days between the filing of the claim notice and the commencement of legal action. A day is commonly defined as the 24-hour period beginning at midnight. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 578 (2002) (defining "day" as a "CIVIL DAY," *"among most modern nations*: the mean solar day of 24 hours beginning at mean midnight"); *id.* at 316 (defining "calendar day" as "a civil day: the time from midnight to midnight"). Providing that suit may not be commenced "until sixty days have elapsed," RCW 4.96.020(4) requires that 60 calendar days must "pass away" or "expire" before legal action is com-

---

[3] 119 Wn. App. at 366 (emphasis added). It is unclear why the Court of Appeals, if it were indeed counting the first date (December 10, 2001) and excluding the last (February 8, 2002), would have referred to February 8 as day 60, rather than day 61.

menced. *See id.* at 729 (defining the verb "elapse" as "to . . . PASS—usu. used of time" and the noun "elapse" as "*of time*: PASSAGE, EXPIRATION"); *see also* THE CONCISE OXFORD DICTIONARY OF CURRENT ENGLISH 332 (6th ed. 1976) (defining "elapse" as "(Of time) pass away"); WEBSTER'S, *supra*, at 1650 (defining "pass away" as "to go out of existence: come to an end"). In sum, because strict compliance with the plain language of the statute requires that a period of 60 calendar days must come to an end after the claim notice is filed, the waiting period ran from December 11, 2001, through February 8, 2002, making the commencement of a lawsuit permissible, at the earliest, on February 9, the day *after* Troxell filed her complaint.[4]

■ ¶13 Our plain language analysis comports with the general rule that, "[w]here it is provided that a certain result shall not accrue *until after the expiration of a given number of days* from a stated date, then both the first and last days must be excluded, so that the full number of days will be allowed." 74 AM. JUR. 2D *Time* § 15 (2001 & Supp. 2004) (emphasis added) (citing *Owens v. Graetzel*, 146 Md. 361, 373, 126 A. 224 (1924) (holding that, where mortgage sale may occur only after trustee gives at least three weeks' notice by newspaper advertisement, " 'at least three weeks' means 'three clear weeks,' and that in determining what space of time constitutes three clear weeks, the date of the first publication of the advertisement and the day of sale shall both be excluded"); *Heuck v. State ex rel. Mack*, 127 Ohio St. 247, 250, 253, 187 N.E. 869 (1933) (concluding that, where constitution provided that " '[n]o law passed by

---

[4] We also note that, by its plain language, the statute does not permit a computation of 60 24-hour periods that would begin precisely when the claim notice is filed—a method of computation that, in any case, would have been no more helpful to Troxell than the requirement of 60 intervening calendar days. To view the waiting period as 60 24-hour periods, we would not only have to ignore the common understanding of the word "day," but we would have to impute to the legislature an intent to draft a statute with potentially "absurd consequences." *Vela*, 100 Wn.2d at 641. Where suit was commenced on the 60th calendar day after the filing of the claim notice, parties would have to attend to the precise hour, minute, and second of the filing of the claim notice and the commencement of the suit. *See* 74 AM. JUR. 2D *Time* § 13 n.1 (2001) (noting that requiring a computation based on the precise timing of an act "would produce endless confusion and strife, and would prove impolitic if not wholly impracticable").

the general assembly shall go into effect *until ninety days after* it shall have been filed by the governor,' " provision meant "ninety full days" and that, consequently, an act filed on October 3, 1932, would not go into effect "until *at least* the first moment of January 2, 1933")). A very clear application of this rule is likewise reflected in *State v. Smith*, 557 So. 2d 393 (La. Ct. App. 1990). There, the Louisiana appellate court concluded that, where the defendant was convicted on May 19, 1987, and sentenced on May 22, 1987, the trial court violated the statutory requirement that " 'at least three days shall elapse between conviction and sentence.' " *Id.* at 400 (citing, inter alia, *State v. Johnson*, 275 So. 2d 405 (La. 1973)); *see Carson v. McDowell*, 203 Kan. 40, 41-42, 452 P.2d 828 (1969) (holding that, where zoning ordinance required that " 'at least twenty (20) days shall elapse between the date of such publication and the date set for hearing,' " hearing on January 10, 1966, violated ordinance, since only 19 days had elapsed since publication on December 21, 1965); *see also In re Lancaster City Ordinance No. 55-1952*, 383 Pa. 471, 472, 473, 119 A.2d 307 (1956) (determining that, in requiring that " '[a]t *least three days shall intervene*,' " legislature meant "three days must elapse between").

¶14 Our interpretation of RCW 4.96.020(4) finds further support in prior Washington cases. First, references in various cases establish that the day on which the tort claim notice was filed was not counted toward the 60-day waiting period but, rather, that the first day following the filing of the claim notice was deemed day 1. *See, e.g., Hintz v. Kitsap County*, 92 Wn. App. 10, 12, 15, 960 P.2d 946 (1998) (where notice of claim was filed on August 24, 1995, and suit commenced "57 days later" on October 20, day 1 of 60-day period was August 25); *Sievers v. City of Mountlake Terrace*, 97 Wn. App. 181, 182, 184, 983 P.2d 1127 (1999) (where claim notice was filed on August 19, 1997, and October 17 and 18 were identified as "day 59" and "the 60th day," day 1 was August 20). Second, Washington courts have often described the waiting period as a period of 60 intervening

days. *See Hall v. Niemer*, 97 Wn.2d 574, 584 n.4, 649 P.2d 98 (1982) (referring to "the 60-day buffer period *between* filing a claim and suit" (emphasis added)); *see also Daggs v. City of Seattle*, 110 Wn.2d 49, 57, 750 P.2d 626 (1988) (quoting *Hall*); *Medina*, 147 Wn.2d at 327 (Chambers, J., dissenting) (citing *Daggs* and recognizing that "the short 60-day buffer period *between* filing a claim and suit is reasonably related to achieving negotiated settlements" (emphasis added)). Third, and most significantly, we may infer that the *Medina* court viewed the waiting period as the 60 calendar days intervening between the filing dates of the claim notice and complaint. The *Medina* opinion established that the claim notice was filed on Wednesday, January 7, 1998; that the final two days of the 60-day waiting period were a Saturday and Sunday, March 7 and 8; and that the plaintiff filed the complaint four days early on Thursday, March 5. 147 Wn.2d at 307, 308, 322. Consistent with those facts, the 60-day period at issue in *Medina* ran from January 8 through March 8, and the earliest permissible date for filing the complaint was the 61st day, Monday, March 9, 1998. *Id.* at 308 n.2.

¶15 Additionally, our interpretation of the statutory waiting period as 60 full calendar days is consistent with the principles expressed in our recent, unanimous decision in *Castro*, 151 Wn.2d 221. There, we were asked to consider how the claim notice statute's tolling provision worked. We rejected the school districts' contention that, where a statute of limitations expires during the 60-day waiting period, the limitations period is simply tolled until the expiration of the waiting period, thus requiring the filing of the complaint the day after the waiting period ends. Rather, we concluded that the legislature intended to protect a plaintiff's total allotment of days in the three-year statute of limitations period; consequently, we agreed with the plaintiffs' position that, because the number of days lost due to the 60-day waiting period had to be preserved, the tolling provision "add[ed] *60 days*" to the original limitations period. *Id.* at 226 (emphasis added).

¶16 In support of her view that the waiting period must be 59 intervening days, Troxell applies a narrow reading of *Castro* to an extraordinary circumstance, the filing of the notice of claim on the last day of the original statute of limitations—a circumstance not at issue here, where Troxell filed her notice a week before the limitations period expired, or in *Castro*, where the hypothetical was neither raised by the parties nor contemplated by the court. Applying our last sentence in *Castro*—"Essentially, the provision adds 60 days to the end of the otherwise applicable statute of limitations"—Troxell observes that the hypothetical claimant's limitations period would expire on day 60 of the waiting period. *Id.* We acknowledge that a rigid "add-60" rule would result in the running of the statute of limitations against any litigant who waited until the last day of the original statute of limitations period to file a claim notice (unless the 60th day thereafter were a Saturday, Sunday, or legal holiday), but the imputation that our *Castro* opinion put into place such a rule—one that would foreclose a claimant's suit on statute of limitations grounds, despite the claimant's timely filing of the claim notice—is contrary to the entire thrust of our decision in *Castro*.[5] Because our *Castro* decision was based on our prior holding in *Medina* that the tolling provision "does not violate due process protections," our *Castro* decision cannot fairly be construed to deprive a litigant of the full limitations period. 147 Wn.2d at 315. We view our prior jurisprudence as plainly protecting a plaintiff's entitlement to the full statutorily mandated limitations period; just as the partial day on which the claim notice is filed cannot be used to reduce the 60-day waiting period mandated by the legislature, it cannot be regarded as a full day of the limitations period. In sum, we decline to adopt Troxell's narrow reading of *Castro* as a basis for reducing the 60-day waiting period to 59 days.

---

[5] In a decision predating *Castro*, the Court of Appeals implied in dicta that a plaintiff must file the claim notice one day prior to the running of the statute of limitations. *See Sievers*, 97 Wn. App. at 184 (observing that, where the last day of the original limitations period was August 20, 1997, and the claimant filed her notice on August 19, 1997, she had "waited until the last possible day to file her notice of claim with the City before the running of the limitation period").

While in *Castro* we sought to ensure that the *waiting period* did not reduce a plaintiff's *limitations period*, in the present case we are equally obliged to ensure that an unjustifiably narrow application of the statute's *tolling provision* does not indirectly impair the legislature's requirement of a 60-day *waiting period*.

¶17 Finally, while we find some additional support in CR 6(a) for our interpretation of RCW 4.96.020(4), we nevertheless must agree with Troxell that the rule is not dispositive here. The rule provides as follows:

> In computing any period of time prescribed or allowed by these rules, by the local rules of any superior court, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday, in which event the period runs until the end of the next day which is neither a Saturday, a Sunday nor a legal holiday.

CR 6(a); *cf.* RCW 1.12.040 (providing that "[t]he time within which an act is to be done . . . shall be computed by excluding the first day, and including the last, unless the last day is a holiday, Saturday, or Sunday"). The rule plainly applies to the computation of a litigation related deadline or limitations period (that is, as described in RCW 1.12.040, a period of "time within which an act is to be done"), and it ensures that the party with the duty to act within the allotted time period is accorded the full number of days specified in the court rule, court order, or applicable statute. For example, CR 12(a)(1) provides that "[a] defendant shall serve his answer within . . . 20 days, exclusive of the day of service, after the service of the summons and complaint upon him pursuant to rule 4." The explicit exclusion of the day of service is consistent with CR 6(a)'s exclusion of "the day of the act, event, or default from which the designated period of time begins to run." CR 6(a) thus allows the defendant 20 full calendar days for serving the answer—not 19 days and some fraction of either the day the summons

and complaint were served or the 20th day thereafter. *See Corliss v. McFerran*, 115 Wash. 56, 196 P. 583 (1921).

¶18 While CR 6(a)'s exclusion of the date from which the time period runs, along with its preservation of the full period of time allotted, is consistent with our plain language analysis of RCW 4.96.020(4), the remainder of CR 6(a) is indisputably inapplicable to the computation of the 60-day waiting period. Were CR 6(a) applied, the second sentence of the rule would mandate that the last day of the 60-day waiting period "shall be included, unless it is a Saturday, a Sunday or a legal holiday, *in which event the period runs until the end of the next day which is neither a Saturday, a Sunday nor a legal holiday.*" (Emphasis added.) This method of computing the final day of a time period has never been applied to the computation of the 60-day waiting period. Where the last day of the waiting period has fallen on a Saturday or Sunday, the following Monday has not been designated day 60 of the waiting period, an extension that CR 6(a) expressly requires. For example, in *Sievers*, the last day of the 60-day period was Saturday, October 18, 1997. Had CR 6(a) been applied, the waiting period would have been extended through Monday, October 20, but the *Sievers* court made no such extension, stating instead that, for purposes of filing suit, Monday, October 20, was "a date in compliance with the 60-day waiting rule mandated by RCW 4.96.020(4)." 97 Wn. App. at 184. Likewise, in *Medina*, having identified Sunday, March 8, 1998, as the final day of the 60-day period, this court did not suggest that, under CR 6(a), the waiting period would have to be extended through Monday, March 9, but indicated instead that legal action was permissible on that date. 147 Wn.2d at 307, 308, 322.

¶19 In sum, while CR 6(a) is consistent with our determination that RCW 4.96.020(4) requires the exclusion of the filing date for the claim notice, the rule's prescription for defining the final day of a time period has never been applied to compute the final day of the 60-day waiting period, nor should it ever be, given the obvious distinction between a limitations period and a waiting period. Because

deadlines or limitations periods set forth in court rules, court orders, or applicable statutes generally require parties to take legal action, CR 6(a) ensures that the last date for taking such action will not fall on a Saturday, Sunday, or legal holiday. In contrast, because a waiting period does not require parties to act but, rather, to refrain from acting, the application of the second sentence of CR 6(a) to the computation of a legislatively defined waiting period would serve no practical purpose and would expand unnecessarily the period of time that the legislature had deemed appropriate for refraining from action.

¶20  We also reject the suggestion that *Pederson v. Moser*, 99 Wn.2d 456, 662 P.2d 866 (1983), controls the computation of the waiting period in RCW 4.96.020(4). At issue in *Pederson* was a statute prescribing a 20-day waiting period between the service of a recall demand and the preparation of a ballot synopsis: "The officer with whom the charge is filed shall serve a copy of the charge upon the officer whose recall is demanded not less than twenty days prior to formulation of the ballot synopsis."[6] Although syntactically different from RCW 4.96.020(4), former RCW 29.82.015 (1976) likewise prescribed a waiting period between two events; it provided that the ballot synopsis could not be formulated until at least 20 days had passed following the service of the recall demand on the officer whose recall had been demanded. The recall demand at issue in *Pederson* was served late on the evening of December 14, 1982, and the county prosecutor issued the ballot synopsis on the morning of January 3, 1983. *Id.* at 462. While the *Pederson* court held that the 20-day waiting period had been satisfied despite the intervention of only 19 full calendar days between the service of the recall demand and the preparation of the ballot synopsis, the court based its holding on grounds that we find inapplicable to the present case. First, the *Pederson* court simply quoted CR 6(a) and, with no discussion of the rule's applicability, purported to rely on it,

---

[6] Former RCW 29.82.015 (1976). For the 1984 amendment deleting the 20-day waiting period, *see* Laws of 1984, ch. 170, § 2.

despite the rule's inapplicability to the computation of a waiting period. Second, the *Pederson* court's "hold[ing] that fractions of days were properly ignored in the present case" is at best confusing, since the court necessarily counted as an entire day either the fractional day on which the recall demand was served or the fractional day on which the ballot synopsis was formulated. *Id.* at 463. Finally, rather than requiring strict compliance with the waiting period, as has been mandated for RCW 4.96.020(4), *see Medina*, 147 Wn.2d at 316-18, the *Pederson* court applied a substantial compliance standard, observing that, "[e]ven if the 20-day waiting period established by RCW 29.82.015 *was not complied with*," Pederson's failure to show that the "technical noncompliance" had harmed him precluded issuance of an injunction or stay. 99 Wn.2d at 463 (emphasis added). In sum, the *Pederson* court's analysis of the waiting period prescribed in former RCW 29.82.015 furnishes no clear precedent for our interpretation of RCW 4.96.020(4).

## CONCLUSION

¶21 RCW 4.96.020(4) forbids the commencement of a tort action "until sixty days have elapsed after" the plaintiff files a notice of claim with the "local governmental entity." Strict compliance with the waiting period is required. *Medina*, 147 Wn.2d at 316-18. We decline to interpret the statute's plain references to "sixty days" and "the sixty-day period" as permitting a period of time less than 60 calendar days. RCW 4.96.020(4). In light of the relevant dictionary definitions, the general rule derived from decisions in other jurisdictions directly addressing the computation of a statutorily imposed waiting period, and the treatment of the waiting period in several Washington cases, including *Medina*, we hold that the legislature intended that 60 calendar days must intervene between the filing dates of the claim notice and the commencement of suit. We reverse

the Court of Appeals and affirm the trial court's summary dismissal of Troxell's suit.

ALEXANDER, C.J., and MADSEN, BRIDGE, and FAIRHURST, JJ., concur.

¶22 CHAMBERS, J. (dissenting) — If I were ill and a physician prescribed antibiotics, giving me one pill on December 10, and telling me to take another after one day elapsed, I would take the second pill on December 11. My learned colleagues of the majority, however, reasoning that for a day to elapse a full day must intervene, would not take their second pill until December 12. I must confess some concern for their well being. Because the majority's interpretation would frustrate the purpose of the statute it interprets; would lead to anomalous results; is inconsistent with previous judicial interpretations, common parlance, and dictionary definitions; I dissent.

¶23 We are asked to interpret RCW 4.96.020(4). It has two subparts. One subpart sets the time that a government entity must be given to investigate and settle a claim, and the other tolls the statute of limitations during that time. RCW 4.96.020(4) reads:

> No action shall be commenced against any local governmental entity for damages arising out of tortious conduct until sixty days have elapsed after the claim has first been presented to and filed with the governing body thereof. The applicable period of limitations within which an action must be commenced shall be tolled during the sixty-day period.

The court's fundamental objective is to ascertain the legislature's intent in enacting a statute. *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001). If the meaning of the statute is plain on its face, then the court must give effect to that plain meaning. *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). If, however, the meaning is unclear, the court must examine the statutory scheme as a whole, as well as related statutes to determine what the legislature intended. *Id.* at 11. Because this case

involves the method of computing time in different types of context, we must look at the statute in the context of the purposes of the timing requirements at issue.

¶24 Most of the time limits we confront are limits within which something must be accomplished. For example, a notice of appeal must be filed *within* 30 days. *See* RAP 5.2(a). Statutes of limitation are examples of time limits within which something must be accomplished. In the instant case, RCW 4.16.080 provides:

> The following actions shall be commenced *within* three years:
>
> . . . .
>
> (2) An action . . . for any other injury to the person or rights of another not hereinafter enumerated. . . .

RCW 4.16.080 (emphasis added).

¶25 Where the action is against a government entity, there is a requirement that a notice be filed with the government entity 60 days before commencing an action against that governmental body. The first subpart of RCW 4.96.020(4) thus presents us with a different type of time limit: one which prohibits action from being taken *until* a period of time has passed.[7] The majority concludes that, although generally action must be taken within a time limit, the legislature intended that action be taken outside of the notice waiting period. The majority's interpretation would frustrate the intent of the act because the statute of limitations would lapse before the 60 day waiting period expired. This is so because the majority interprets "elapse" to require that, not counting the day the notice is filed, a full 60 days must begin and end and filing cannot take place until the 61st day. However, when the 60-day tolling period is added to the statute of limitations, the plaintiff is required to act *within* 60 days. We must, if we can, interpret the two subparts of the statute in harmony with each other.

---

[7] I agree with the Court of Appeals and the majority that CR 6(a) controls the computation of time when action must be taken *within* a period of time but does not control the computation of time where action is prohibited *until* a period of time has passed. *Troxell v. Rainier Pub. Sch. Dist. No. 307*, 119 Wn. App. 361, 363, 80 P.3d 623 (2003).

If we conclude that for a day to "elapse" the day need only end, and not start *and* end, then the two subparts of RCW 4.96.020(4) are in harmony.

¶26 The first subpart of RCW 4.96.020(4) prohibits the commencement of a tort action "until sixty days have elapsed after" the filing of the notice of claim with the "local governmental entity." This gives government defendants time to investigate and settle claims where possible. *See Medina v. Pub. Util. Dist. No. 1 of Benton County*, 147 Wn.2d 303, 317, 53 P.3d 993 (2002). While the statute's purpose is clear, the statute is ambiguous as to when 60 days "elapse." It is apparent that two interpretations are possible: 60 days elapse on the 60th day after filing or 60 days elapse when 60 *full* days have intervened between filing of the notice and the commencement of a lawsuit. Because the former of these interpretations represents the plain and ordinary meaning of the phrase, "until 60 days have elapsed," I would hold that this is the only reasonable interpretation.

¶27 The conclusion that a day elapses when it ends is supported by both common parlance and the dictionary definition of "elapse" used by the majority. In common parlance, we compute time by omitting the first day but including all of the following days. Thus, if a physician gives a patient a prescription with instructions to take five pills beginning on Monday and to allow a day to elapse between taking each pill, we would understand the physician to be instructing us to take a pill on Monday, Tuesday, Wednesday, Thursday, and Friday.

¶28 Additionally, the majority defines "elapsed" so as to require that a day must "pass away" or "expire." Majority at 352. A day cannot pass away or expire at any time other than at the stroke of midnight. Rebecca Troxell served her claim notice at 3:35 P.M. on December 10. One could say that a day elapses after 24 hours but December 10 did not elapse at 3:35 P.M. on December 11; instead, the day elapsed just like every other day, at the stroke of midnight, which ended December 10 and began December 11. The majority seems

to understand "a day elapsing" as not counting any of the day the notice was filed and then "a full day beginning and then ending." *See* majority at 352.

¶29 The majority suggests that if we read the statute so as to allow the suit to be filed on the 60th day, we will have adopted a rationale that considers a day to have "elapsed" in the time between 11:59:59 P.M. and 12 midnight. Majority at 351. The majority's interpretation of a day elapsing is arbitrary since, under its analysis, a person who files her notice of claim at 11:59:59 P.M. on December 9 could properly file her claim at 12 midnight on February 8, while a plaintiff who waited just one more second would be barred for an additional 24 hours and could not file until February 9.

¶30 More importantly, the majority's reading leads to an absurd result in a foreseeable circumstance, a situation we strive to avoid. *State v. Neher*, 112 Wn.2d 347, 351, 771 P.2d 330 (1989). The purpose of the tolling clause is to account for the statutory delay associated with the waiting period. Despite the majority's recognition that "in *Castro* we sought to ensure that the *waiting period* did not reduce a plaintiff's *limitations period*," majority at 357, the majority readily acknowledges that its reading effectively precludes claims from litigants who wait until the last day of the original statute of limitations period to serve claim notice. Majority at 356. The majority resolves this tension by noting that "the imputation that our *Castro* opinion put into place such a rule—one that would foreclose a claimant's suit on statute of limitations grounds, despite the claimant's timely filing of the claim notice—is contrary to the entire thrust of our decision in *Castro*." Majority at 356. If this statement means only that we ought not lay the blame for such a result at *Castro*'s feet, I agree. *Castro*'s guaranty of the full statutorily mandated limitations period cannot rationally lead to a shortening of the limitations period. The majority's reading of *Castro*, however, effectively shortens the limitations period by one day by requiring that the claim notice be filed *one day prior* to the expiration of the

limitations period. This harsh result is contrary to *Castro*'s guaranty and can hardly be said to have been intended by the legislature. Instead, "[t]he spirit or purpose of an enactment should prevail." *State v. Day*, 96 Wn.2d 646, 648, 638 P.2d 546 (1981).

¶31 In *Sievers v. City of Mountlake Terrace*, 97 Wn. App. 181, 983 P.2d 1127 (1999), the court interpreted the same statute. That court, as I do, read the two subparts of RCW 4.96.020(4) in harmony. The court referred to the day on which the claimant filed, a Friday, as the 59th day. *Id*. The court thus implied that, but for the next day being a Saturday, the claimant could have brought her claim on that, the 60th day. *Id*. at 184. Because of the intervening weekend, the following Monday was "the only (last) possible day to commence the action . . . in compliance with the 60-day waiting rule . . . *and* within the applicable statute of limitation." *Id*. (emphasis added).

¶32 We do not read statutes to reach an absurd result when they may be read in an utterly sensible fashion. *Glaubach v. Regence Blueshield*, 149 Wn.2d 827, 833, 74 P.3d 115 (2003). Since the majority's reading of the statute leads to an absurd result in a foreseeable circumstance, I respectfully dissent.

C. JOHNSON and SANDERS, JJ., and IRELAND, J. Pro Tem., concur with CHAMBERS, J.