[No. 52001-6-I.   Division One.   May 2, 2005.]

LORI J. BUNDRICK, *Individually and as Guardian, Appellant,* v. BARRY C. STEWART ET AL., *Defendants,* THE UNIVERSITY OF WASHINGTON ET AL., *Respondents.*

12

*Timothy K. Ford* and *Melton L. Crawford* (of *MacDonald Hoague & Bayless*), for appellant.

*Howard M. Goodfriend* (of *Edwards, Sieh, Smith & Goodfriend, P.S.*), for respondents.

¶1 ELLINGTON, A.C.J. — When a patient consents to treatment but wishes to limit the individuals authorized to participate in her care, she must communicate the limitations of her consent. Lori Bundrick sustained serious injuries during surgery at Swedish Medical Center. Among other claims, Bundrick asserted that a University of Washington medical school resident participated in her surgery without her consent, and therefore committed medical battery. Under the facts presented, we affirm dismissal of this claim.

## BACKGROUND

¶2 Lori Bundrick had had a tubal ligation to prevent pregnancy. When she and her second husband wished to conceive a child naturally, she attempted to reverse the tubal ligation through a procedure called tubal reanastomosis. Dr. Barry Stewart of Pacific Gynecology Specialists was to perform Bundrick's surgery at Swedish

Hospital. Under an affiliation agreement with the University of Washington Medical School, University of Washington residents in training are supervised by doctors at Swedish. Dr. Stewart is a member of the University's clinical faculty, and was one of the physicians responsible for supervising residents at Swedish.

¶3 About a week before the operation, Bundrick met with Stewart. Stewart told her that a resident would be present during the surgery. According to Bundrick, she asked, "They are not going to do my surgery, are they?" and Stewart told her, "[N]o, I will do it all. They are just there to observe." Clerk's Papers at 77.[1]

¶4 Bundrick then signed two consent forms. Neither form indicated that a resident would participate in the surgery. One form, however, contains the following broad statement:

> **VERIFICATION OF MEDICAL CONSENT:** I, the undersigned, hereby *consent to all medical treatment or hospital services performed or prescribed by/or at the direction of the attending physician*, and the administration and performance of any X-ray examinations, laboratory procedures, anesthesia or other procedures which are considered necessary or advisable. I understand that I or my authorized representative have the right to decide whether to accept or refuse medical care. I will ask for any information I want to have about my medical care and will make my wishes known to the attending physicians and hospital staff.

Clerk's Papers at 91 (emphasis added).

¶5 Tarun Jain was a third year resident at the medical school. He assisted Stewart during Bundrick's surgery. Jain testified in his deposition that he performed several tasks during the surgery at Stewart's direction and under Stewart's supervision.

¶6 During surgery, Stewart concluded Bundrick's fallopian tubes could not be reattached, and after speaking

---

[1] We reference Bundrick's deposition testimony rather than her trial testimony (which was similar) because the trial court dismissed this claim on summary judgment.

with Bundrick's husband, aborted the reanastomosis. Stewart then discovered a tear in the mesentery lining of Bundrick's bowel, which he and Jain attempted to repair with sutures. The sutures were improperly placed, compromising blood flow to the bowel. This ultimately resulted in massive infection when part of the bowel necrotized and perforated, spilling feculent fluid into the abdominal cavity. Bundrick suffered extreme pain, several hospitalizations, and two surgeries. She was unable to work in the business she owned with her husband, and they were forced to sell the business.

¶7 Bundrick sued Stewart, Pacific Gynecology Specialists, Swedish Medical Center, Swedish Health Services, Swedish Medical Services, the University of Washington, and the State of Washington, alleging injuries resulting from health care under chapter 7.70 RCW. She alleged the defendants were liable for failure to follow the accepted standard of care, failure to obtain consent (medical battery), and failure to obtain informed consent. She did not sue Jain, but alleged that others had vicarious liability for his negligence.

¶8 The University and the State (collectively, "the University") filed a motion for summary judgment. The court granted the motion in part, dismissing all claims against the University for failure to obtain consent, failure to obtain informed consent, and vicarious liability for Stewart's acts and omissions. The court denied the University's motion insofar as it related to vicarious liability for Jain's alleged failure to comply with the standard of care.

¶9 The case was tried to a jury. At the close of plaintiff's case, the University moved to dismiss the claim that Jain failed to comply with the standard of care, and the court granted the motion. Thus, all claims against the University were dismissed before the case went to the jury.

¶10 The jury returned a verdict against Stewart and Pacific Gynecology Specialists, P.C. in the amount of $3.2 million. According to the special verdict form, the verdict

was based on Stewart's negligence, not his failure to obtain Bundrick's informed consent to Jain's participation.

■ ¶11 Stewart appealed. Bundrick filed a cross-appeal, and also appealed dismissal of certain claims against the University. The University cross-appealed. While these appeals were pending, Stewart and Bundrick settled for an amount less than the full judgment, and Bundrick filed a satisfaction of the judgment against Stewart.[2]

¶12 The issue remaining is Bundrick's appeal from the summary judgment ruling[3] that neither the University nor its resident had a duty to obtain her consent to the resident's participation in her surgery.

## DISCUSSION

■ ¶13 The University first contends the medical malpractice statute, chapter 7.70 RCW, supersedes the common law cause of action for medical battery and replaces it with the statutory claim for failure to obtain informed consent. We disagree.

¶14 The statute authorizes three causes of action: breach of the standard of care, breach of promise that the injury suffered would not occur, and injury resulting "from health care to which the patient . . . did not consent." RCW 7.70.030(3). This section announces a general cause of action for absence of consent. It makes no reference to *informed* consent, and nothing in its language indicates the

---

[2] Because the verdict compensated all Bundrick's damages and the judgment has been satisfied, we asked the parties to submit supplemental briefs on two questions: whether Bundrick is an aggrieved party under RAP 3.1, and whether this matter is moot. (The amount of the settlement is confidential, and disclosure of the actual amount is not necessary for purposes of our analysis.)

The settlement does not discharge the University. *See* RCW 4.22.060(2) (release does not discharge others liable on the same claim). Under *Nielson v. Spanaway Gen. Med. Clinic, Inc.*, 135 Wn.2d 255, 264, 956 P.2d 312 (1998), Bundrick may seek the balance of the judgment from another at-fault party. The satisfaction of judgment does nothing to benefit the University because judgment was entered only against Stewart. We conclude this matter is not moot and that Bundrick is aggrieved under RAP 3.1.

[3] We apply the usual de novo standard on review of summary judgment. *Anderson v. State Farm Mut. Ins. Co.*, 101 Wn. App. 323, 329, 2 P.3d 1029 (2000).

legislature intended to eliminate claims for injuries arising from health care to which the patient gave *no* consent. Elsewhere, the statute sets forth the requirements of *informed* consent, again without suggesting any limitation on claims for complete lack of consent. RCW 7.70.050.

¶15 An action for total lack of consent sounds in battery, while a claim for lack of informed consent is a medical malpractice action sounding in negligence.[4] "The performance of an operation without first obtaining any consent thereto may fall within the concepts of assault and battery as an intentional tort, but the failure to tell the patient about the perils he faces is the breach of a duty and is appropriately considered under negligence concepts." *Miller v. Kennedy*, 11 Wn. App. 272, 281-82, 522 P.2d 852 (1974). While *Miller* preceded the enactment of chapter 7.70 RCW, the legislature is presumed to know the existing state of case law, *Price v. Kitsap Transit*, 125 Wn.2d 456, 463, 886 P.2d 556 (1994), and nothing in the statute indicates the legislature intended to eliminate the common law claim. Further, the two causes of action protect entirely different values: informed consent protects the patient's right to know the risks of the decisions she makes about her care, whereas the cause of action for common law battery protects an individual's right to privacy and bodily integrity. *Keogan v. Holy Family Hosp.*, 95 Wn.2d 306, 313-14, 622 P.2d 1246 (1980); DAN B. DOBBS, THE LAW OF TORTS § 29, at 54 (2000). "[A] surgical operation is a technical battery, regardless of its results, and is excusable only when there is express or implied consent." *Bonner v. Moran*, 126 F.2d 121, 122 (D.C. Cir. 1941). Chapter 7.70 RCW preserves actions for failure to obtain consent (common law medical battery) where a health care provider fails to obtain any consent, or where the patient refuses care by a particular provider.

---

[4] *See* 6 AM. JUR. 2D *Assault and Battery* § 6 (2004) ("Unlike an informed consent case in which it must be shown that as a result of recommended treatment, the patient actually suffers injury the risk of which was undisclosed, or the patient actually suffers injury that would not have occurred had the patient opted for one of the undisclosed methods of treatment, it is not necessary for a plaintiff to prove such specific medical findings under the theory of battery.").

¶16 Battery is an intentional tort; the tortfeasor must intend an offensive touching, and the plaintiff must show there was no consent to the touching. *Garratt v. Dailey*, 46 Wn.2d 197, 200-01, 279 P.2d 1091 (1955); RESTATEMENT (SECOND) OF TORTS § 13 cmt. d (1965); *see also* DOBBS, *supra*, at 57 ("in the case of battery, the plaintiff's burden is to show that the defendant intended to and did cause either harm or 'offense,' a burden that ordinarily requires the plaintiff to show that the defendant's touching was not apparently consented to."). But where consent is given, limitations upon it will be effective *if communicated. See* DOBBS, *supra*, § 104, at 244. Thus, where a patient has consented to a surgical procedure, but contends she limited her consent to certain participants, she must demonstrate she communicated that limitation.

¶17 The parties chiefly debate whose burden it was to obtain Bundrick's consent to be treated by Dr. Jain. Bundrick contends the trial court erred in relying on custom and practice to conclude that neither the University nor Jain had a duty to obtain Bundrick's consent to Jain's participation. She characterizes the issue as the right of a patient not to have her body used for medical education without her consent. For its part, the University contends the responsibility for obtaining consent lay solely with Stewart.[5]

---

[5] The University relies exclusively on informed consent cases for the proposition that not all health care providers involved in patient care are subject to the same obligations to secure the patient's consent. *See Howell v. Spokane & Inland Empire Blood Bank*, 114 Wn.2d 42, 55, 785 P.2d 815 (1990) (refusing to impose "equal informed consent obligations as to every person and entity falling within the definition [of health care provider]"); *Alexander v. Gonser*, 42 Wn. App. 234, 239, 711 P.2d 347 (1985) (rejecting claim that a hospital has an independent duty to inform a patient of test results administered at the request of the treating physician). As informed consent cases, these decisions are inapposite. Bundrick offers a New Jersey case, which provides a more pertinent analysis. In *Perna v. Pirozzi*, 92 N.J. 446, 457 A.2d 431 (1983), a patient specifically requested that a procedure be done by a particular surgeon, but the surgery was in fact performed by others. The *Perna* court held the patient had a cause of action in battery against the surgeons who performed the procedure without her consent. *Id.*, at 439. Implicit in this conclusion is the recognition that each surgeon participating in an operation has a duty to secure the patient's consent: "Any non-consensual touching is a battery. Even more private than the decision who may touch one's body is the decision who may cut it open and invade it with hands and

¶18  Jain never met Bundrick before the operation, acted only at Stewart's direction or request, and testified that as a resident, he was not allowed to operate independently and that it was not within his discretion to refuse to participate or reject Stewart's direction. He assumed that Bundrick had consented to his assistance at surgery. But Bundrick testified at her deposition she obtained Stewart's assurance that the resident would observe but not participate. Jain had no right to participate without Bundrick's consent. As to this issue, therefore, the summary judgment record reflects a question of fact as to whether Bundrick communicated the limitation of her consent. Summary judgment was improper.

¶19  We do not reverse, however, because the issue of *informed* consent to Jain's participation was tried to the jury, and its special verdict on that question is dispositive on the common law claim under the circumstances here. The jury had the evidence of Bundrick's broad consent to "all medical treatment or . . . services *performed or pre-scribed by/or at the direction of the attending physician.*" Clerk's Papers at 91 (emphasis added). The jury was instructed that "[a] patient may refuse to consent to a particular doctor . . . [and a] health care provider has a duty to honor such a refusal of consent if the patient has informed the health care provider of the refusal." Clerk's Papers at 778. The jury found that Bundrick did not refuse consent to the participation of Jain.

¶20  The University argues the battery issue is thus foreclosed by the doctrine of collateral estoppel.[6] Bundrick objects that the instruction improperly shifted the burden

---

instruments. . . . A surgeon who operates without the patient's consent engages in the unauthorized touching of another and, thus, commits a battery." *Id.* (citations omitted).

[6] "[T]he doctrine of collateral estoppel, or issue preclusion, prevents relitigation of an issue after the party against whom the doctrine is applied has had a full and fair opportunity to litigate his or her case." *Nielson v. Spanaway Gen. Med. Clinic, Inc.*, 135 Wn.2d 255, 262, 956 P.2d 312 (1998). Collateral estoppel applies when (1) the issue decided in the prior adjudication is identical with the one presented in the second action; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in

of communicating a lack of consent to her, whereas it is the physician's burden to obtain consent. This is so, but it ignores the fact that Bundrick gave consent. Given the trial evidence, the question for the jury was what effect to give to the broad consent signed by Bundrick in light of her testimony that she did not consent to be treated by Jain. The effect of the instruction was to tell the jury that once broad consent is given, any limitations upon it must be communicated by the patient. This is a correct statement of the law of medical battery. *See* DOBBS, *supra*, § 104, at 244; RESTATEMENT (SECOND) OF TORTS § 13 cmt. d (1965). By its special verdict, the jury necessarily found that Bundrick did not communicate any limitation as to participants in her care. Under the circumstances here, this is exactly the question necessary to decide the medical battery claim.

¶21 Bundrick points out that the University's own practice is to obtain consent to participation by residents and students in procedures at University Hospital. Bundrick also suggests several means by which the University could have obtained the consent of patients such as Bundrick. Doubtless any of these procedures would be feasible, and likely preferable. Here, however, the jury's finding on the informed consent issue decided the fact question dispositive of the common law claim. Although summary judgment on this issue was improper, the verdict disposes of the claim.

¶22 Affirmed.

GROSSE and BECKER, JJ., concur.

---

privity with the party to the prior adjudication; and (4) application of the doctrine does not work an injustice. *Id.* at 262-63.