[No. 61811-3-I.   Division One.   June 1, 2009.]

TAMMY BENNETT, *Individually and as Personal Representative, Appellant*, v. SEATTLE MENTAL HEALTH ET AL., *Respondents*.

[34] 149 Wn. App. at 715.

*David P. Moody, Anthony D. Shapiro,* and *Martin D. McLean* (of *Hagens Berman Sobol Shapiro, LLP*), for appellant.

*Pamela M. Andrews* and *Jenny M. Churas* (of *Johnson Andrews & Skinner, P.S.*) and *John T. Kugler* (of *Burgess Fitzer, PS*), for respondents.

¶1 SCHINDLER, C.J. — As a condition precedent to commencing an action alleging medical negligence against a health care provider, RCW 7.70.100(1) requires the claimant to give the health care provider at least 90 days notice of the intent to file suit. Under the plain language of RCW 7.70.100(1), if a claimant serves the notice within 90 days of the expiration of the statute of limitations, the claimant

must wait until after the mandatory 90-day waiting period has expired and then file the lawsuit within the next five court days. Approximately one month before the expiration of the statute of limitations, Tammy Bennett, individually and as the personal representative of the estate of her son Shawn Manning, served Seattle Mental Health, Dr. Meredith A. Fine, and Albertsons, Inc., with a notice of intent to sue for medical negligence. Bennett filed the lawsuit on the 90th day of the mandatory 90-day waiting period. Because the statute imposing the mandatory 90-day waiting period must be strictly construed, we affirm dismissal of the lawsuit.

¶2 Tammy Bennett gave birth to Shawn Manning on July 27, 1978. When Shawn was approximately three years old, he was diagnosed with severe autistic disorder and pervasive developmental disorder. Shawn was later diagnosed with severe mental retardation and a seizure disorder. When Shawn was approximately nine years old, his primary treatment provider, Dr. Stephen T. Glass, prescribed the drug carbamazepine or "Tegretol" for Shawn's "profound behavior disorder." According to Dr. Glass, Tegretol is an anticonvulsant drug that treats a number of neurobehavioral disorders.

¶3 Shawn lived with his mother and his stepfather, Curtis Bennett, until he was 14 years old. At 14, Shawn moved into a group home facility operated by Service Alternatives of Washington (SAW). When Shawn was 18, he moved into an adult family home operated by SAW. SAW was responsible for Shawn's daily care needs, including providing his prescribed medications. While Shawn could bathe, dress, and eat by himself, he could not talk on the phone, use money, or communicate well.

¶4 In October 1996, Tammy and Curtis Bennett filed a petition to be appointed as the guardians for Shawn because he was incapable of managing his own care or making informed decisions on his own. The court appointed a guardian ad litem for Shawn. The guardian ad litem prepared an extensive report recommending that the

Bennetts be appointed Shawn's guardians. In December, the court entered an order appointing the Bennetts as Shawn's guardians.

¶5 In 2000, Seattle Mental Health and Dr. Meredith A. Fine became Shawn's primary treatment providers. Dr. Fine continued to prescribe Tegretol for Shawn's behavior disorder. In 2004, Albertsons, Inc., assumed responsibility for filling Shawn's prescriptions.

¶6 On October 21, 2004, SAW staff found Shawn unconscious on the floor of his bedroom. The staff administered CPR (cardiopulmonary resuscitation) and contacted emergency services. Within minutes of their arrival, Shawn died. The medical examiner concluded that the cause of Shawn's death was a seizure "disorder of unknown etiology." Shawn was 26 years old when he died.

¶7 Almost three years later, on September 20, 2007, Tammy Bennett served Seattle Mental Health, Dr. Fine, and Albertsons, with a notice of intent to sue. Exactly 90 days later, on December 19, Tammy Bennett, individually and as the personal representative of Shawn's estate, filed a wrongful death and medical negligence action against Seattle Mental Health, Dr. Fine, and Albertsons. Bennett asserted the health care providers breached the standard of care by negligently prescribing, administering, and supervising Shawn's medication. Bennett claimed that the dosage of Tegretol was mistakenly doubled, and that when the health care providers realized their mistake, they cut the dosage in half, causing Shawn's death.

¶8 Bennett filed a certificate of merit from Dr. Glass with the complaint. In the certificate of merit, Dr. Glass states that Seattle Mental Health violated the standard of care and was negligent "in the manner that it prescribed and managed the Tegretol dosage administered to Shawn Manning," causing his death. Dr. Glass states:

> The standard of care calls for a health care provider to administer a consistent, appropriately-tailored dosage of Tegretol to any patient. Tegretol dosage should not be doubled

without careful consideration and prior medical approval given the risks involved. Likewise, the abrupt cessation of Tegretol dosage is not advised as serious behavioral consequences can result as well as the risk of precipitation of seizures. It is also critical for a health care provider to regularly test a patient[']s blood levels to determine if adjustments to the Tegretol dosage are required.

¶9 In answer to the complaint, Seattle Mental Health and Dr. Fine (collectively SMH), and Albertsons asserted that Bennett failed to comply with the mandatory requirements of RCW 7.70.100(1) by filing the lawsuit before expiration of the 90-day waiting period.

¶10 SMH and Albertsons each filed a motion for summary judgment dismissal of the lawsuit on the grounds that Bennett failed to strictly comply with the requirements of RCW 7.70.100(1). SMH and Albertsons also claimed that Bennett did not have standing to bring a wrongful death action. The court granted summary judgment and dismissed Bennett's lawsuit.[1]

¶11 Bennett contends the trial court erred in dismissing her lawsuit against SMH and Albertsons on the grounds that she failed to comply with RCW 7.70.100(1) by filing the complaint on the 90th day instead of the 91st day after serving the notice of intent to sue. The dispositive question is whether a plaintiff can file a lawsuit on the 90th day of the mandatory 90-day waiting period under RCW 7.70-.100(1) or whether the plaintiff must wait and file suit during the next five court days after the 90th day.

¶12 The interpretation and meaning of a statute is a question of law subject to de novo review. *Castro v. Stanwood Sch. Dist. No. 401*, 151 Wn.2d 221, 224, 86 P.3d 1166 (2004). The primary objective of statutory interpretation is to discern and implement legislative intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). To determine legislative intent, we first look to the

---

[1] Because the three year statute of limitations had expired, the lawsuit was dismissed with prejudice.

language of the statute. We must give meaning to every word in a statute and presume the legislature did not use any superfluous words. *In re Recall of Pearsall-Stipek*, 141 Wn.2d 756, 767, 103 P.3d 1034 (2000). Absent ambiguity, a statute's meaning is derived from the language of the statute and we must give effect to that plain meaning as an expression of legislative intent. *Campbell & Gwinn*, 146 Wn.2d at 9-10. " '[T]he court should assume that the legislature means exactly what it says. Plain words do not require construction.' " *City of Kent v. Jenkins*, 99 Wn. App. 287, 290, 992 P.2d 1045 (2000) (internal quotation marks omitted) (quoting *State v. McCraw*, 127 Wn.2d 281, 288, 898 P.2d 838 (1995)). In construing a statute, we must avoid a strained or absurd interpretation. *Ford Motor Co. v. City of Seattle, Executive Servs. Dep't*, 160 Wn.2d 32, 41, 156 P.3d 185 (2007).

¶13 The legislature adopted the medical malpractice act, chapter 7.70 RCW, in response to the escalating cost of medical malpractice insurance and the corresponding rise in health care costs. 1976 FINAL LEGISLATIVE REPORT, 44th Wash. Leg., 2d Ex. Sess., at 22. The provision of the medical malpractice act requires mandatory mediation of health care claims, RCW 7.70.100, and was originally enacted as part of the medical malpractice act in 1993.

¶14 In 2006, the legislature adopted comprehensive amendments to the medical malpractice act to improve patient safety, to address the high cost of medical malpractice insurance, to provide incentives to settle cases before resorting to court, and to improve the mediation process.

> It is the intent of the legislature to prioritize patient safety and the prevention of medical errors above all other considerations as legal changes are made to address the problem of high malpractice insurance premiums. Thousands of patients are injured each year as a result of medical errors, many of which can be avoided by supporting health care providers, facilities, and carriers in their efforts to reduce the incidence of those mistakes. It is also the legislature's intent to provide incentives to settle cases before resorting to court, and to provide the

option of a more fair, efficient, and streamlined alterative to trials for those for whom settlement negotiations do not work. Finally, it is the intent of the legislature to provide the insurance commissioner with the tools and information necessary to regulate medical malpractice insurance rates and policies so that they are fair to both the insurers and the insured.

LAWS OF 2006, ch. 8, § 1.

¶15 One of the amendments to the mandatory mediation provision required a claimant to serve a health care provider with a notice of claim before suing for medical negligence. As a condition precedent to filing an action, former RCW 7.70.100(1) (2006) requires a claimant to provide a health care provider with a notice of intent to sue at least 90 days before filing the lawsuit. Former RCW 7.70.100(1) also states that if the claimant serves the care provider with the notice of intent to sue within 90 days of the expiration of the statute of limitations, the time to commence the action is tolled for 90 days after service of the notice. Former RCW 7.70.100(1) provides in pertinent part:

> No action based upon a health care provider's professional negligence may be commenced unless the defendant has been given at least ninety days' notice of the intention to commence the action. If the notice is served within ninety days of the expiration of the applicable statute of limitations, the time for the commencement of the action must be extended ninety days from the service of the notice.

¶16 In 2007, the legislature amended RCW 7.70.100(1) to clarify when the 90-day waiting period ends and when a claimant can file suit if the notice of intent to sue is served within 90 days of the expiration of the statute of limitations. As amended, if the notice of intent to sue is served within 90 days of the expiration of the statute of limitations, the claimant has an additional five court days after the 90-day waiting period "expires" to file suit. LAWS OF 2007, ch. 119, § 1. As amended, RCW 7.70.100(1) provides in pertinent part:

No action based upon a health care provider's professional negligence may be commenced unless the defendant has been given at least ninety days' notice of the intention to commence the action. . . . *If the notice is served within ninety days of the expiration of the applicable statute of limitations, the time for the commencement of the action must be extended ninety days from the date the notice was mailed, and after the ninety-day extension expires, the claimant shall have an additional five court days to commence the action.*[2]

¶17 Here, there is no dispute that Bennett served the notice of intent to sue on SMH and Albertsons within 90 days of the expiration of the 3-year statute of limitations. There is also no dispute that Bennett filed the lawsuit against SMH and Albertsons on the 90th day of the mandatory 90-day waiting period under RCW 7.70.100(1).

¶18 But Bennett contends that under the plain language of RCW 7.70.100(1), a suit may be commenced on the 90th day after the notice was served. Bennett asserts that because RCW 7.70.100(1) states that no action may be commenced unless a health care provider has been given "at least 90 days notice" means that a claimant may file the lawsuit on the 90th day. Bennett also asserts that the language that states a "claimant shall have an additional five court days" to file the lawsuit means "in addition" to the 90th day. Based on that premise, Bennett argues that interpreting RCW 7.70.100(1) to require claimants to file suit after the 90-day waiting period would render the language of the statute that provides for an "additional five court days" superfluous. Bennett's interpretation of RCW 7.70.100(1) is contrary to the express language of the statute and case law.

■ ■ ¶19 Reading the plain language of RCW 7.70.100(1) as a whole, it is clear that the legislative intent is to require a mandatory 90-day waiting period to allow the parties the opportunity to resolve medical malpractice claims against the health care provider. If the notice of

---

² (Emphasis added.)

intent to sue is filed within 90 days of the expiration of the statute of limitations, the statute of limitations is tolled an additional five days to allow the claimant to timely file suit. Bennett's interpretation of RCW 7.70.100(1) ignores the language that, *"after the ninety-day extension expires, the claimant shall have an additional five days to commence the action."*[3] Recognizing the need to extend the statute of limitations in those circumstances where the time period would otherwise expire, the language "after the ninety-day extension expires, the claimant shall have an additional five days to commence the action" was clearly intended to ensure a statutory time period that allows the claimant to file suit before the expiration of the statute of limitations. In other words, if a claimant files the notice within 90 days of the expiration of the statute of limitations, the legislature provides an additional five days after the 90-day waiting period expires to timely commence the lawsuit.

¶20 The case law requiring strict compliance with a statutory claim filing waiting period also supports the conclusion that the language of RCW 7.70.100(1) requires the 90 days to "expire" or "come to an end" before a lawsuit is commenced.[4] *Waples v. Yi*, 146 Wn. App. 54, 58-59, 189 P.3d 813 (2008), *review granted*, 165 Wn.2d 1031, 203 P.3d 382 (2009). In *Waples*, 146 Wn. App. at 58-59, this court addressed the question of whether the 90-day notice of intent to sue under RCW 7.70.100(1) was mandatory. The *Waples* court held that the plain language of RCW 7.70.100(1) requires strict compliance with the statute and the 90-day waiting period.

¶21 Bennett asserts that the claim filing requirements of RCW 4.96.020(4) and the Washington State Supreme Court's decision in *Troxell v. Rainier Public School District No. 307*, 154 Wn.2d 345, 353, 111 P.3d 1173 (2005) are inapposite. We disagree.

---

[3] (Emphasis added.)

[4] *Webster's Third New International Dictionary* 801 (1969) defines "expires" to mean "to come to an end . . . to reach a close (as of a period of time)."

¶22 RCW 4.96.020(4) requires a plaintiff to provide a governmental agency with 60 days' notice before commencing a tort suit for damages. RCW 4.96.020(4) provides in pertinent part:

> No action shall be commenced against any local governmental agency . . . for damages arising out of tortious conduct until sixty days have elapsed after the claim has first been presented to and filed with the governing body thereof. The applicable period of limitations within which an action must be commenced shall be tolled during the sixty-day period.

¶23 The Washington Supreme Court in *Troxell* strictly interpreted the mandatory 60-day waiting period under RCW 4.96.020(4), to require claimants to wait until the 60-day period elapsed before filing a tort lawsuit for damages against a governmental agency. *Troxell*, 154 Wn.2d 345. In *Troxell*, the claimant filed her lawsuit on the 60th day of the mandatory 60-day waiting period under RCW 4.96.020. *Troxell*, 154 Wn.2d at 349. The court held that because the statutory waiting period must be strictly construed, the statutory language requires a waiting period of 60 full calendar days. *Troxell*, 154 Wn.2d at 352. The court concluded that where " 'a certain result shall not accrue *until after the expiration of a given number of days* from a stated date, then both the first and last days must be excluded, so that the full number of days will be allowed.' " *Troxell*, 154 Wn.2d at 353 (quoting 74 Am. Jur. 2d *Time* § 15 (2001 & Supp. 2004)). The dissent in *Troxell* took issue with the majority's definition of "elapsed" as requiring a day to " 'pass away' or 'expire,' " and argued that "elapse" does not mean the same thing as "expire." *Troxell*, 154 Wn.2d at 363 (Chambers, J., dissenting).

¶24 Bennett argues that because RCW 4.96.020(4) states that no action may be commenced "until sixty days have elapsed" and RCW 7.70.100(1) states that no action may be commenced unless the health care provider is given "at least ninety days' notice," *Troxell* does not apply. However, Bennett's argument does not take into account the language in RCW 7.70.100(1) that where, as here, a notice

is served within 90 days of the expiration of the statute of limitations, the statute expressly provides that "after the ninety-day extension *expires* the claimant shall have an additional five court days."[5] Like the "elapsed" language in RCW 4.96.020(4), the use of the word "expires" in RCW 7.70.100(1) indicates that the legislature intended claimants to wait the full 90 days before commencing suit against a health care provider. We also assume that the legislature was aware of the dispute in *Troxell* about the language in RCW 4.96.020(4) and took that into consideration when it decided to use "expires" in its 2007 amendment to RCW 7.70.100(1). *Glass v. Stahl Specialty Co.*, 97 Wn.2d 880, 887, 652 P.2d 948 (1982). ("In construing legislation, we presume the legislature is familiar with past judicial interpretations of its enactments.").

¶25 Based on the unambiguous language of RCW 7.70.100(1) and the case law requiring strict compliance with the mandatory 90-day waiting period, we hold that under the plain language of RCW 7.70.100(1), if a claimant serves a health care provider with notice of intent to sue within 90 days of the expiration of the statute of limitations, the claimant must wait until the mandatory 90-day notice period has expired, and then file suit in the next 5 court days. Accordingly, Bennett had to wait until "after the ninety-day extension" expired to file her lawsuit. Because Bennett failed to comply with RCW 7.70.100(1), we affirm dismissal of her lawsuit against SMH and Albertsons.[6]

ELLINGTON and LAU, JJ., concur.

---

[5] (Emphasis added.)

[6] Because we conclude that Bennett failed to comply with the 90-day filing requirement under RCW 7.70.100(1), we need not reach Bennett's argument that the trial court erred in concluding that she did not have standing and in the alternative that RCW 4.24.010 was constitutional.