[No. 38849-9-II.   Division Two.   April 27, 2010.]

LINDA YOUNG, *Appellant*, v. EDWARD A. SAVIDGE, *Respondent*.

808

810

*Novelle F. Ballard* (of *Mitchell Lang & Smith*), for appellant.

*John C. Versnel III* and *Tracy J. Pearson* (of *Lawrence and Versnel PLLC*), for respondent.

¶1 VAN DEREN, C.J. — Linda Young appeals the trial court's order granting summary judgment on her claims of informed consent, breach of contract, intentional misrepresentation, and violation of the Consumer Protection Act (CPA)[1] in favor of Edward Savidge, DDS. We affirm the trial court's order granting summary judgment to Savidge on Young's informed consent and breach of contract claims because they are time barred.[2] We reverse summary judgment dismissing Young's intentional misrepresentation and CPA claims because material issues of fact remain that preclude summary judgment and remand for a trial on the merits and further proceedings.

## FACTS

¶2 In April 2005, Dr. Edward Savidge, a dentist in Port Townsend, recommended installation of a porcelain-capped, high noble crown on Young's upper first left molar. High noble crowns are made of gold, platinum, or palladium. Savidge's web page entitled "Make-up of dental crowns"

---

[1] Ch. 19.86 RCW.

[2] Young failed to file a certificate of merit under RCW 7.70.150, but *Putman v. Wenatchee Valley Medical Center, PS*, 166 Wn.2d 974, 985, 216 P.3d 374 (2009) invalidated the statute.

states that his crowns "are most often made of gold or porcelain" and temporary crowns "can be made of stainless steel." Clerk's Papers (CP) at 61.

¶3 On June 1, 2005, Savidge installed the crown. Shortly thereafter, Young experienced a burning sensation in her head, confusion, depression, fatigue, and discoloration of the gum adjacent to the crown. On January 12, 2006, Savidge sent Young a bill for the installation of a "high noble" crown. CP at 42.

¶4 On January 14, 2006, Young saw Dr. Runar Johnson, a dentist in Sequim, and described the symptoms that had developed after Savidge installed her crown. On February 10, 2006, following her request, Young received Savidge's assay chart showing the metal in the crown. The report revealed that the crown was made of approximately 80 percent nickel, 20 percent chromium, and small amounts of molybdenum and titanium. Johnson removed Young's crown that day. After the crown was removed, Young's symptoms diminished substantially, but she continued to suffer from headaches, fatigue, and a burning sensation in her gums. In a declaration filed in response to Savidge's motion for summary judgment, Johnson stated: "Nickel is known to be a toxic metal." CP at 63.

¶5 On March 6, 2008, Young mailed Savidge a notice of her intent to sue him. On June 13, 2008, Young sued Savidge, claiming that he committed "medical malpractice," failed to gain her informed consent to the procedure, breached their contract, violated the CPA, and engaged in "misrepresentation."[3] CP at 2, 5 (emphasis omitted).

¶6 Savidge brought a motion for summary judgment on Young's claims and Young filed a motion for partial summary judgment on her breach of contract and informed

---

[3] Young argues that Savidge is wrong in characterizing the " 'gravamen' " of the complaint as a medical standard of care violation. Reply Br. of Appellant at 1. She argues, "This is not an issue of negligence or one calling into question the professional skill of Dr. Savage [sic]" and, instead, "[t]his case deals with the unethical practice of promising an expensive high noble crown . . . and delivering a cheap substitute with a higher incidence of toxic reactions." Reply Br. of Appellant at 4.

consent claims. The trial court granted Savidge's summary judgment motion, dismissing all of Young's claims because Young did not file her action within the applicable medical malpractice statute of limitations under chapter 7.70 RCW. The trial court also stated that it was granting summary judgment to Savidge because Young had failed to file a certificate of merit under RCW 7.70.150 when she filed suit. The trial court denied Young's motion for partial summary judgment.

¶7 Young appeals.

## ANALYSIS

### I. Standard of Review

¶8 We review an order or denial of summary judgment de novo, performing the same inquiry as the trial court. *Aba Sheikh v. Choe*, 156 Wn.2d 441, 447, 128 P.3d 574 (2006). We affirm a summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Huff v. Budbill*, 141 Wn.2d 1, 7, 1 P.3d 1138 (2000). We must construe the facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party. *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999). The burden is on the moving party to show there is no issue of material fact. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). A fact is "material" when the outcome of the litigation depends on it. *Balise v. Underwood*, 62 Wn.2d 195, 199, 381 P.2d 966 (1963). The nonmoving party must set forth specific facts that demonstrate a genuine issue of material fact and cannot rest on mere allegations. CR 56(e); *Baldwin v. Sisters of Providence in Wash., Inc.*, 112 Wn.2d 127, 132, 769 P.2d 298 (1989).

II.    INFORMED CONSENT

¶9 The trial court granted summary judgment on all claims,[4] including the informed consent claim, because Young did not file her claim within the medical malpractice statute of limitations. Young argues that the trial court improperly applied the statute of limitations to her informed consent claim because chapter 7.70 RCW applies only to a claim for medical malpractice based on negligence. We disagree.

A. Young's Informed Consent Claim Falls under Chapter 7.70 RCW

¶10 The legislature has codified the prima facie elements of an informed consent claim for medical care in RCW 7.70.050.[5] *Stewart-Graves v. Vaughn*, 162 Wn.2d 115, 123, 170 P.3d 1151 (2007). RCW 7.70.030(3) specifically defines "[an] injury result[ing] from health care to which the patient or his representative did not consent" as a basis for which a plaintiff could recover damages. "Health care" means " 'the process in which [a physician is] utilizing the skills which he had been taught in examining, diagnosing,

---

[4] The trial court stated, "[T]here are numerous legal arguments. However, you can't get past go until the statute of limitations issue is resolved . . . . And because I find that the statute of limitations has expired, the court need not go further." Report of Proceedings at 40, 42.

[5] RCW 7.70.050 states in part:

(1) The following shall be necessary elements of proof that injury resulted from health care in a civil negligence case or arbitration involving the issue of the alleged breach of the duty to secure an informed consent by a patient or his representatives against a health care provider:

(a) That the health care provider failed to inform the patient of a material fact or facts relating to the treatment;

(b) That the patient consented to the treatment without being aware of or fully informed of such material fact or facts;

(c) That a reasonably prudent patient under similar circumstances would not have consented to the treatment if informed of such material fact or facts;

(d) That the treatment in question proximately caused injury to the patient.

(2) Under the provisions of this section a fact is defined as or considered to be a material fact, if a reasonably prudent person in the position of the patient or his representative would attach significance to it deciding whether or not to submit to the proposed treatment.

treating or caring for the plaintiff as his patient.' " *Branom v. State*, 94 Wn. App. 964, 969-70, 974 P.2d 335 (1999) (alteration in original) (quoting *Estate of Sly v. Linville*, 75 Wn. App. 431, 439, 878 P.2d 1241 (1994)).

¶11 When Savidge examined Young and recommended and installed the crown, he engaged in "health care." Thus, Young's claim that Savidge failed to inform her of the use of nickel chromium in the crown and its attendant risks, causing her to suffer adverse symptoms, falls under RCW 7.70.050 and its concomitant statute of limitations in former RCW 4.16.350 (1998).

### B. Young's Informed Consent Claim Was Time Barred

¶12 Under former RCW 4.16.350(3), a plaintiff must bring a medical malpractice action within either of the following two periods: (1) "three years of the act causing the injury" or (2) "one year of the plaintiff having actual or constructive knowledge of the injury." *Duke v. Boyd*, 133 Wn.2d 80, 84, 942 P.2d 351 (1997); *see also* former RCW 4.16.350(3). Young did not file her claim within either of these periods.

¶13 Young seems to argue that the "last act" occurred when, on January 12, 2006, Savidge sent her a bill for the installation of a " 'high noble' " crown. Br. of Appellant at 7. Because the doctrine of informed consent is based on " 'the individual's right to ultimately control what happens to his body,' " *Stewart-Graves*, 162 Wn.2d at 123 (quoting *Keogan v. Holy Family Hosp.*, 95 Wn.2d 306, 313-14, 622 P.2d 1246 (1980)), and common sense dictates that this control is relinquished once the procedure to which the patient could have consented is complete, we hold that the last act in this case occurred when Savidge failed to inform Young that he was installing the nickel chromium crown in place of the agreed on high noble crown. Thus, the last act occurred by June 1, 2005. Young's complaint filed on June 13, 2008, was not within the three year statute of limitations, which expired on June 1, 2008. Young also cannot claim that she filed suit within one year of discov-

ering her injury because the latest she discovered the injury was February 10, 2006, when she received the report that the crown contained large percentages of nickel chromium.

¶14 In 2006, the legislature adopted comprehensive amendments to the medical malpractice act addressing its limitations period. *See generally Bennett v. Seattle Mental Health*, 150 Wn. App. 455, 460, 208 P.3d 578 (2009); LAWS OF 2006, ch. 8. One of those amendments,[6] which became effective on June 7, 2006, required as a condition precedent to filing an action, that a claimant provide a health care provider with a notice of intent to sue at least 90 days before filing the lawsuit. Former RCW 7.70.100(1) (2006); *Bennett*, 150 Wn. App. at 461; LAWS OF 2006, ch. 8, § 314. It also stated that if the claimant serves the care provider with the notice of intent to sue within 90 days of the expiration of the statute of limitations, the time to commence the action is tolled for 90 days after the plaintiff serves the notice. Former RCW 7.70.100(1); *Bennett*, 150 Wn. App. at 461.

¶15 "[W]hen an exception to a statute of limitation is amended or repealed, the new limitation or exception begins to apply at the effective date of the new tolling statute." *Torkelson v. Roerick*, 24 Wn. App. 877, 880, 604 P.2d 1310 (1979). "Such an interpretation is not held to be a retroactive application of a new statute since the critical date is the effective date of the amended statute, not the date on which the claim arose." *Torkelson*, 24 Wn. App. at 879-80. "A statute operates prospectively when the precipitating event for operation of the statute occurs after enactment, even when the precipitating event originated in a situation existing prior to enactment." *In re Estate of Burns*, 131 Wn.2d 104, 110-11, 928 P.2d 1094 (1997).

---

[6] Former RCW 7.70.100(1) (2006) provides in pertinent part:

No action based upon a health care provider's professional negligence may be commenced unless the defendant has been given at least ninety days' notice of the intention to commence the action. If the notice is served within ninety days of the expiration of the applicable statute of limitations, the time for the commencement of the action must be extended ninety days from the service of the notice.

■■ ■ ¶16 Accordingly, the 90 day tolling provision in former RCW 7.70.100(1) applied to Young from the amendment's effective date of June 7, 2006. *See* LAWS OF 2006, ch. 8, § 314. The "precipitating event," *Burns*, 131 Wn.2d at 110, for operation of both the requirement of 90 days' notice and the tolling of the statute of limitations in former RCW 7.70.100(1) is "service of the notice." Thus, the 2006 amendment applied prospectively.

¶17 Young mailed her notice of intent to sue to Savidge on March 6, 2008, after the amendment became effective on June 7, 2006. *See* LAWS OF 2006, ch. 8. The three year statute of limitations on Young's informed consent claim was set to expire on June 1, 2008; her notice of intent to sue on March 6, 2008, fell within the "90 days of the expiration of the statute of limitations." *Bennett*, 150 Wn. App. at 461. Thus, under former RCW 7.70.100(1), the statute of limitations on Young's informed consent claim was tolled for 90 days from March 6, 2008, extending the last day to file to June 4, 2008.

¶18 In 2007, the legislature again amended RCW 7.70.100(1) "to clarify when the 90-day waiting period ends and when a claimant can file suit if the notice of intent to sue is served within 90 days of the expiration of the statute of limitations." *Bennett*, 150 Wn. App. at 461; LAWS OF 2007, ch. 119, § 1. As amended, if the notice of intent to sue is served within 90 days of the expiration of the statute of limitations, the claimant has an additional 5 court days after the 90 day waiting period expires to file suit. RCW 7.70.100(1); *Bennett*, 150 Wn. App. at 461; LAWS OF 2007, ch. 119, § 1. This amendment became effective on July 22, 2007. LAWS OF 2007, ch. 119.

■■ ■ ¶19 As with the 2006 amendment, the "precipitating event," *Burns*, 131 Wn.2d at 110, for operation of the additional 5 court days' period in the 2007 amendment is "service of the notice," RCW 7.70.100(1), which occurred after the 2007 amendment became effective, and thus, applied to Young's case prospectively. The addition of five court days makes the last filing date June 11, 2008. Thus, we hold that the statute of limitations on Young's informed

consent claim expired on June 11, 2008. Because RCW 7.70.100(1) requires "strict compliance" with the statute and the 90 day waiting period, when Young filed her complaint on June 13, 2008, the statute of limitations had expired under all the applicable statutory amendments. *Bennett*, 150 Wn. App. at 463. Accordingly, the trial court did not err when it granted summary judgment on Young's informed consent claim.[7]

## III.   BREACH OF CONTRACT

¶20  Young next argues that Washington courts recognize common law breach of contract claims even when they arise out of health care. We hold that the breach of contract claim was also time barred under the medical malpractice statute of limitations and thus, the trial court did not err when it granted summary judgment on the breach of contract claim.

¶21  Washington courts have not recognized common law breach of contract claims when they arise out of health care. Chapter 7.70 RCW "sweeps broadly," including "causes of action in contract." *Wright v. Jeckle*, 104 Wn. App. 478, 481, 16 P.3d 1268 (2001). In *Hansen v. Virginia Mason Medical Center*, 113 Wn. App. 199, 208, 53 P.3d 60 (2002), our court "presume[d] that the legislature intended to codify the common law" and analyzed plaintiff's breach of

---

[7] Young also argues that the statute of limitations on the informed consent claim was tolled because Savidge fraudulently concealed that the crown was not of a high noble quality and that the trial court improperly retroactively applied the 2006 amendment to former RCW 4.16.350 when it disallowed such tolling. But the 2006 amendment did not change the "fraud [or] intentional concealment" provision, which states, "[T]he patient . . . has one year from the date of the actual knowledge in which to commence a civil action for damages." RCW 4.16.350(3).

Because Young discovered her injury on February 10, 2006, when she received the assay report that the crown contained nickel chromium and she filed suit on June 13, 2008, she did not commence her action within the one year period set forth in the "fraud [or] intentional concealment" provision. RCW 4.16.350(3). Thus, even if there was proof that Savidge fraudulently concealed the nature of the crown, Young's argument fails.

contract claim under RCW 7.70.030(2).[8] It added that "the statute codifies the [contract liability] cause of action that existed at common law."[9] *Hansen*, 113 Wn. App. at 204.

¶22 Because Savidge and Young agreed that Savidge would install the high noble crown during a " 'process in which [Savidge would] utiliz[e his] skills . . . in examining, diagnosing, treating or caring for [Young] as his patient,' " we hold that the breach of contract claim arose from "health care." *Branom*, 94 Wn. App. at 969-70 (quoting *Estate of Sly*, 75 Wn. App. at 439). Consequently, we analyze this claim under chapter 7.70 RCW and former RCW 4.16.350.

¶23 In her breach of contract claim, the act or omission alleged to have caused the injury is Savidge's installation of a nickel chromium crown on June 1, 2005, when he had previously agreed to install a high noble crown. As previously discussed, because Young discovered the injury on February 10, 2006, and she filed suit on June 13, 2008, the trial court did not err in applying the 2007 and 2006 amendments to RCW 7.70.100 and ruling that Young's breach of contract claim was time barred.

IV. INTENTIONAL MISREPRESENTATION

¶24 The trial court also granted summary judgment on Young's intentional misrepresentation claim because Young did not file her claim within the time limits in former RCW 4.16.350(3). Young argues that her intentional misrepre-

---

[8] RCW 7.70.030(2) states that a plaintiff must establish "[t]hat a health care provider promised the patient or his representative that the injury suffered would not occur."

[9] Young relies exclusively on *Hansen* to support her argument that Washington courts recognize common law breach of contract claims. The *Hansen* court discussed the prestatute common law breach of contract claims, but the court used this discussion to inform the statutory breach of contract analysis as this issue presented a case of first impression on breach of contract under chapter 7.70 RCW. *Hansen*, 113 Wn. App. at 204-08. We agree with Savidge that *Hansen* does not support Young's argument.

sentation claim[10] is not governed by chapter 7.70 RCW and former RCW 4.16.350. She argues that the general statute of limitations in RCW 4.16.080 applies instead and that the trial court erred in applying former RCW 4.16.350 to find her claim untimely. Savidge argues that Young is precluded from stating an intentional misrepresentation claim in common law because her injuries arise from "health care." We hold that chapter 7.70 RCW does not govern this claim, but whether this claim is time barred under the general three year statute of limitations remains a genuine issue of material fact.

A. Chapter 7.70 RCW Does Not Govern the Intentional Misrepresentation Claim

¶25 Washington courts analyze medical malpractice claims apart from common law intentional tort claims even when those torts arise under "health care." Our Supreme Court distinguished a malpractice action from a common law action of outrage in *John Doe v. Finch*, 133 Wn.2d 96, 100, 942 P.2d 359 (1997). "Doe's action for malpractice centers around Dr. Finch's alleged unprofessional and unethical sexual relationship with Doe's wife while Dr. Finch was providing therapy to Doe." *Finch*, 133 Wn.2d at 100. The court applied the general statute of limitations to the outrage claim and the medical malpractice statute of limi-tations to the malpractice action.[11] *Finch*, 133 Wn.2d at 100-01.

---

[10] Even though the complaint does not explicitly claim that Savidge intentionally misrepresented to Young that the crown was "high noble," the complaint in its entirety states such a claim. We construe pleadings "liberally" and "[i]f a complaint states facts entitling the plaintiff to some relief, it is immaterial by what name the action is called." *State v. Adams*, 107 Wn.2d 611, 620, 732 P.2d 149 (1987).

The complaint states that even though Young did not consent to it, Savidge put in a nickel chromium crown contrary to the agreement to use a high noble crown. It further states that Savidge failed to advise Young of the substituted materials and the higher risks inherent with those materials. Young labels count V as "[m]isrepresentation." CP at 5. Thus, we construe the complaint to properly allege intentional misrepresentation.

[11] Our court stated:

Although the Court of Appeals grouped together Doe's malpractice and outrage claims, as did both parties in their briefs, our disposition of the medical

¶26 Division Three of this court has stated that, to analyze plaintiff's claims "under the umbrella of chapter 7.70 RCW," the claims must "fit within one of the three statutorily prescribed causes of action—negligence, contract, or lack of informed consent." *Wright*, 104 Wn. App. at 480. Conspicuously absent from the prescribed causes of action is intentional tort.

¶27 Further, Division One of this court has held that chapter 7.70 RCW did not eliminate the common law cause of action for medical battery, explaining that an "action for total lack of consent sounds in battery, while a claim for lack of informed consent is a medical malpractice action sounding in negligence." *Bundrick v. Stewart*, 128 Wn. App. 11, 17, 114 P.3d 1204 (2005). It added that "the two causes of action protect entirely different values." *Bundrick*, 128 Wn. App. at 17. Accordingly, the *Bundrick* court held that chapter 7.70 RCW does not supersede the common law cause of action for medical battery. *Bundrick*, 128 Wn. App. at 16-17.

¶28 Savidge primarily relies on *Branom*, 94 Wn. App. at 968-69 to support his argument that Young has no common law claim of intentional misrepresentation. In *Branom*, Division One of this court stated that chapter 7.70 RCW "sweeps broadly. [Chapter 7.70 RCW] clearly states that [it] modifies procedural and substantive aspects of *all* civil actions for damages for injury occurring as a result of health care, regardless of how the action is characterized." *Branom*, 94 Wn. App. at 969. The court added that "whenever an injury occurs as a result of health care, the action for damages for that injury is governed exclusively by [chapter 7.70 RCW]." *Branom*, 94 Wn. App. at 969. But *Branom* involved claims of informed consent and negligent

malpractice issue requires a separate analysis of the outrage claim. While the Legislature's special treatment of malpractice actions under RCW 4.16.350 saves Doe's malpractice claim from summary judgment on the timeliness issue, Doe's outrage claim is still governed by the general statutes of limitation. *Finch*, 133 Wn.2d at 100.

infliction of emotional distress. 94 Wn. App. at 973-75. Thus, the case did not raise an intentional tort claim[12] and is, consequently, inapposite to our analysis.[13]

¶29 Accordingly, we follow *Finch, Wright*, and *Bundrick* in holding that Young's common law claim of intentional misrepresentation does not fall under chapter 7.70 RCW and former RCW 4.16.350. Instead, we apply the three year statute of limitations in RCW 4.16.080(4)[14] to Young's intentional misrepresentation claim. *See Westway Constr., Inc. v. Benton County*, 136 Wn. App. 859, 868, 151 P.3d 1005 (2006).

### B. Genuine Issue of Material Fact

¶30 A fraud action accrues when the aggrieved party discovers, or in the exercise of due diligence should have discovered, the fact of fraud, and sustains some actual damage as a result. *W. Wash. Laborers-Employers Health & Sec. Trust Fund v. Harold Jordan Co.*, 52 Wn. App. 387, 390, 760 P.2d 382 (1988).

¶31 The plaintiff bears the burden to establish that she did not discover the facts constituting the fraud and that she could not reasonably have discovered them within the statute of limitations period. *Sherbeck v. Estate of Lyman*, 15 Wn. App. 866, 870, 552 P.2d 1076 (1976). Mere suspicion of wrong is not discovery of the fraud; the discovery con-

---

[12] Savidge also mentions *Berger v. Sonneland*, 144 Wn.2d 91, 26 P.3d 257 (2001). But *Berger* does not support Savidge's argument. There, the court held that a doctor's conduct constituted "'health care'" because he disclosed confidential information in his effort to discover more information about a patient's use of pain medications so he could treat, diagnose, or care for her and thus, a claim under chapter 7.70 RCW was permissible. *Berger*, 144 Wn.2d at 110. As in *Branom*, the plaintiff in *Berger* made no common law intentional tort claim arising out of health care. Thus, *Berger* does not further Savidge's argument.

[13] In *Rasmussen v. Skagit County*, 448 F. Supp. 2d 1203, 1212 (W.D. Wash. 2006), the court followed *Bundrick* and refused to dismiss as a matter of law plaintiff's common law medical battery claim, noting that Division One did not "mention[ ]" *Branom* in its later *Bundrick* decision.

[14] RCW 4.16.080(4) states, "An action for relief upon the ground of fraud, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud."

templated is of evidentiary facts leading to a belief in the fraud and by which the existence of the fraud may be established. *Davison v. Hewitt*, 6 Wn.2d 131, 137, 106 P.2d 733 (1940); *see also Busenius v. Horan*, 53 Wn. App. 662, 667, 769 P.2d 869 (1989). "Notice that would lead a diligent party to further inquiry is notice of everything to which such inquiry would lead." *Busenius*, 53 Wn. App. at 667. Whether an aggrieved party discovered or could have discovered such facts is a question of fact. *Sherbeck*, 15 Wn. App. at 869. "The time at which [a plaintiff] 'discovered' the facts constituting the fraud, thus triggering the running of the statute of limitations, is a material fact." *Busenius*, 53 Wn. App. at 667.

¶32 After Savidge installed the crown on June 1, 2005, Young experienced a burning sensation in her head, fatigue, and noticeable discoloration around the gum near the crown. Because Young filed suit on June 13, 2008, her claim falls within the three year statute of limitations if she discovered or could have discovered Savidge's misrepresentation about the makeup of the crown on or after June 13, 2005. Thus, if she *"could have* discovered" Savidge's fraud between the day the crown was installed and June 13, 2005, her intentional misrepresentation claim would have fallen outside the statute of limitations. *Sherbeck*, 15 Wn. App. at 868-69 (emphasis added). It is unclear from the record whether Young's adverse symptoms after the crown installation would have led "a diligent party to further inquiry" immediately or soon after the installation. *Busenius*, 53 Wn. App. at 667.

¶33 It is clear that Young actually discovered that Savidge installed a crown different from the one promised on February 10, 2006, when she received the assay report that the crown contained nickel chromium. But this date is irrelevant under the statute of limitations for fraud if she could have discovered (i.e., if the circumstances led a diligent party to further inquiry) at an earlier date that the installed crown was different from the crown promised to her. *See Sherbeck*, 15 Wn. App. at 869; *see also Busenius*, 53

Wn. App. at 667. Thus, there is a genuine issue of material fact about when Young "discovered or could have discovered" the facts constituting the fraud, thus triggering the running of the statute of limitations. *Sherbeck*, 15 Wn. App. at 869. Accordingly, the trial court erred in granting summary judgment on Young's intentional misrepresentation claim.

## V.   CONSUMER PROTECTION ACT

¶34 Young also challenges the trial court's dismissal of her CPA claim for failure to file her claim within the time limits set by former RCW 4.16.350(3). Savidge argues that Young failed to state a CPA claim because his conduct was not "entrepreneurial." Br. of Resp't at 21. Young argues that former RCW 4.16.350 does not apply to her CPA claim because Savidge's conduct was " 'entrepreneurial.' " Br. of Appellant at 11. We hold that whether Young's CPA claim falls under chapter 7.70 RCW and former RCW 4.16.350 is a genuine issue of material fact.

¶35 To prevail in a private CPA claim, the plaintiff must prove (1) an unfair or deceptive act or practice (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). The entrepreneurial aspect of a learned professional's conduct relates to the occurring in trade or commerce prong. *See Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 602-03, 200 P.3d 695 (2009). Washington courts have recognized that CPA claims may differ from an underlying medical malpractice action if the conduct complained of relates to entrepreneurial activities. *Quimby v. Fine*, 45 Wn. App. 175, 181, 724 P.2d 403 (1986) (A claim of medical malpractice based on the failure of a physician to properly inform the plaintiff of the risks and hazards associated with a sterilization procedure "may be within the scope of the [CPA], if it relates to the entrepreneurial aspects of the medical practice."); *see Wright*, 104 Wn. App. at 485 (When

a doctor's entrepreneurial activities are not "health care" under chapter 7.70 RCW, a plaintiff "should . . . be allowed to bring an independent action . . . alleging that entrepreneurial activities violate the CPA."). "[T]he learned professions are not immune [under ]chapter 7.70 RCW[ ] from CPA claims." *Wright*, 104 Wn. App. at 483.

¶36 Here, we hold that, if Young's medical malpractice action relates to Savidge's entrepreneurial activities, chapter 7.70 RCW and former RCW 4.16.350 do not govern Young's CPA claim. "Whether [a defendant] has in fact engaged in entrepreneurial activities which violate the CPA[15] is a question of fact." *Wright*, 104 Wn. App. at 485.

¶37 The entrepreneurial aspects of medical professionals include "billing and obtaining and retaining patients" but preclude "examining, diagnosing, treating, or caring for a patient." *Michael*, 165 Wn.2d at 603. Entrepreneurial aspects were implicated when a doctor solicited patients by advertising a weight loss program that used a diet drug, which a patient could purchase only at the doctor's office. *Wright*, 104 Wn. App. at 480, 484-85. But no entrepreneurial aspects were implicated when a periodontist who used cow bone for bone grafting did not "advertise[ ] or market[ ] the availability of human bone [and] solicit patients based on the availability of human bone" and did not "have any . . . entrepreneurial motive to use cow bone." *Michael*, 165 Wn.2d at 603-04.

¶38 Savidge's web page entitled "Make-up of dental crowns" states that his crowns "are most often made of gold or porcelain" and temporary crowns "can be made of stainless steel." CP at 61. The web page does not mention use of nickel in any of his crowns. It also does not mention high noble crowns or their composition. Accordingly, there is a

---

[15] RCW 19.86.020 states, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful." " 'The term "trade" as used by the [CPA] includes only the entrepreneurial or commercial aspects of professional services, not the substantive quality of services provided.' " *Michael*, 165 Wn.2d at 602-03 (quoting *Ramos v. Arnold*, 141 Wn. App. 11, 20, 169 P.3d 482 (2007)).

material issue of fact about whether Savidge's web page constitutes an advertisement that "solicit[s] patients based on the availability" of permanent crowns made of gold or porcelain without the use of nickel. *Michael*, 165 Wn.2d at 603.

¶39 Young states that "[n]ickel chromium crowns are an inexpensive substitute for noble metals." CP at 3. Savidge argues that this "self-serving" statement is insufficient to find an entrepreneurial motive. Br. of Resp't at 24. But Savidge's web site also suggests that nickel is not a large component of the crowns he installs. Approximately 80 percent of Young's crown was nickel. At least one Washington court reversed summary judgment, holding that "allegations of the complaint are sufficient for the trial court to have concluded . . . that the evidence may be produced after discovery" even though "there is no specific showing that [a defendant] was influenced by any entrepreneurial motives." *Quimby*, 45 Wn. App. at 181-82. Thus, we hold that Young's failure to produce additional evidence suggesting Savidge's entrepreneurial motives at this stage is not fatal to her claim.[16]

¶40 "[W]hether [Savidge's] conduct meets the other prongs of the *Hangman* test is a question of fact to be resolved at the trial level." *Quimby*, 45 Wn. App. at 182. Because there is a question of fact about whether Savidge had an entrepreneurial motive when he withheld the information from Young that nickel would comprise the majority of her crown, the trial court erred when it granted summary judgment.

---

[16] Savidge relies primarily on *Michael* to argue that evidence of an entrepreneurial motive is necessary for a valid CPA claim. In *Michael*, the court held that the periodontist-defendant had no entrepreneurial motives. 165 Wn.2d at 604. But *Michael* is factually distinguishable from the present case. In *Michael*, the periodontist was compelled by necessity to use cow bone instead of the promised human bone: "When the supply of human bone ran out during the procedure, [she] used her judgment and skill as a periodontist to finish the procedure." 165 Wn.2d at 604. Thus, the periodontist's motive to use the bone was necessity, rather than profit. But Savidge faced no such necessity when he agreed to make a high noble crown in April 2005 and installed the crown on June 1, 2005. Thus, Savidge's reliance on *Michael* does not further his argument.

## VI.  CERTIFICATE OF MERIT

¶41 When the trial court granted summary judgment based on untimely filing, it added the following: "I will note for the record I think . . . the certificate of merit argument has merit . . . [a]nd I would also find summary judgment for failure to file the certificate of merit." Report of Proceedings at 42. Our Supreme Court recently held that RCW 7.70.150,[17] which sets forth the certificate of merit requirement, is unconstitutional because "it violates the right of access to courts and conflicts with the judiciary's inherent power to set court procedures." *Putman v. Wenatchee Valley Med. Ctr., PS*, 166 Wn.2d 974, 985, 216 P.3d 374 (2009). "Historically, Washington has followed the general rule that a new decision of law applies retroactively unless expressly stated otherwise in the case announcing the new rule of law." *Lunsford v. Saberhagen Holdings, Inc.*, 166 Wn.2d 264, 271, 208 P.3d 1092 (2009). Neither Young nor Savidge[18] contest the retroactive application of *Putman* on the certificate of merit issue. Thus, the trial court erred when it granted summary judgment on Young's informed consent and breach of contract claims based on Young's failure to file the certificate of merit.

¶42 We affirm the trial court's order on summary judgment on Young's informed consent and breach of contract claims. We reverse summary judgment on Young's intentional misrepresentation and CPA violation claims and remand for a trial on the merits and further proceedings.

ARMSTRONG and PENOYAR, JJ., concur.

---

[17] RCW 7.70.150(1) provides, "In an action against an individual health care provider under this chapter . . . , the plaintiff must file a certificate of merit at the time of commencing the action." RCW 7.70.150(5)(a) states, "Failure to file a certificate of merit that complies with the requirements of this section is grounds for dismissal of the case."

[18] Savidge merely argues, "Although the *Putnam* [sic] decision held the Certificate of Merit requirement unconstitutional, and therefore could not constitute a basis for summary judgment dismissal, this Court must affirm the dismissal of Ms. Young's claims upon other bases." Suppl. Br. of Resp't at 6.